IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| ELLEN WILLIAMS and : | No. 3:12cv354 |
| ELLEN MALONE, : | |
|               Plaintiffs : | (Judge Munley) |
| : | |
| v. : | |
| : | |
| THE STANDARD FIRE INSURANCE : | |
| COMPANY and CORELOGIC, INC., : | |
|               Defendants : | |

:::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::

**MEMORANDUM**

Before the court for disposition is Defendant Standard Fire Insurance Company's motion for summary judgment. The motion has been fully briefed and is ripe for disposition.

**Background**

On June 10, 2010, plaintiffs purchased real property located at Pole 297 Lakeside Drive, Harvey's Lake, Luzerne County, Pennsylvania. (Doc. 1-2, Ex. A to Notice of Removal, Complaint, (hereinafter "Compl.") ¶ 5). Plaintiffs purchased the property for $379,000, and located on the property was a single-family home. (Id.)

Prior to the purchase of the home, Defendant CoreLogic provided plaintiffs with certification that the property's flood risk rated zone was "C." (Id. ¶ 7). Based upon this zone designation, plaintiffs agreed to purchase the property and were able to obtain financing for purchase of the property through RBS Citizens, N.D. (Id. ¶¶ 8, 11).

Defendant Standard Fire Insurance Company is a wholly-owned

subsidiary of Travelers Insurance Company (hereinafter "Standard Fire" or "defendant").[1] (Id. ¶ 3).  Defendant is in the business of selling insurance. (Id.)

The seller of the real property had a flood insurance policy issued by the defendant.  (Id. ¶ 9).  Prior to the sale of the property, the seller transferred the policy to the plaintiffs.  (Id.)  Defendant approved the transfer based upon information that the property was in a flood zone rated "C" per CoreLogic's certification.  (Id.)  After the policy had been transferred to the plaintiffs, defendant renewed it twice, once on August 30, 2010 and then on August 20, 2011.  (Id. ¶ 10).

If CoreLogic had not indicated that the property was located in a flood zone "C," plaintiffs would not have been able to obtain financing or insurance for the property.  (Id. ¶¶ 12-13).

Subsequently, the parties learned that the property was not in a flood risk rated zone "C".  (Id. ¶ 15).  Defendant indicated that it would return all of the insurance premiums that plaintiff had paid because the property is actually not eligible for flood insurance due to its not belonging to a flood risk rated zone "C".  (Id.)  Plaintiffs' property is thus not insured for flood loss and they still owe over $200,000 on their mortgage.  (Id. ¶ 16). Because of the flood risk zone, the property is not worth the mortgaged value.  (Id.)   Plaintiffs own a property that cannot be insured or mortgaged, which reduces its marketability.  (Id.)

Based upon these factual averments, plaintiffs instituted the instant

---

[1]Two defendants are involved in this lawsuit.  This memorandum only addresses the motion for summary judgment filed by Defendant Standard Fire.  Thus, for clarity and simplicity we use the term"defendant" to refer solely to Defendant Standard Fire.

action.  They assert two counts against defendant.  Count I asserts a cause of action for detrimental reliance.  Plaintiffs allege that they detrimentally relied upon defendant's agreement to insure the property.  Plaintiffs relied upon this agreement in purchasing the property, and as a result suffered a substantial financial loss.  (Id. ¶¶ 17-21).  Count II asserts a negligence cause of action.  Plaintiffs allege that defendant was negligent in, *inter alia,* failing to investigate the insurability of the property and confirm the flood zone.   (Id. ¶¶ 23-27).

After answering the complaint, Defendant Standard Fire filed the instant motion for summary judgment.  Defendant argues that the plaintiffs' claims are preempted and barred by federal law.  Additionally, defendant argues that even if the claims were not preempted and barred, they would fail as a matter of law.   The parties have briefed these issues bringing the case to its present posture.

**Jurisdiction**

This court has jurisdiction pursuant to the diversity jurisdiction statute, 28 U.S.C. § 1332.  The plaintiffs are citizens of Pennsylvania. (Doc. 1, Not. of Removal ¶ 5).  Defendant CoreLogic is a citizen of California or Delaware for purposes of federal jurisdiction, and Defendant Standard Fire is a citizen of Connecticut.   (Id. ¶¶ 6-7).  Because we are sitting in diversity, the substantive law of Pennsylvania shall apply to the instant case. Chamberlain v. Giampapa, 210 F.3d 154, 158 (3d Cir. 2000) (citing Erie R.R. v. Tompkins, 304 U.S. 64, 78 (1938)).

**Standard of review**

Granting summary judgment is proper if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the

affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. See Knabe v. Boury, 114 F.3d 407, 410 n.4 (3d Cir. 1997) (citing FED. R. CIV. P. 56(c)). "[T]his standard provides that the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48 (1986) (emphasis in original).

In considering a motion for summary judgment, the court must examine the facts in the light most favorable to the party opposing the motion. Int'l Raw Materials, Ltd. v. Stauffer Chem. Co., 898 F.2d 946, 949 (3d Cir. 1990). The burden is on the moving party to demonstrate that the evidence is such that a reasonable jury could not return a verdict for the non-moving party. Anderson, 477 U.S. at 248 (1986). A fact is material when it might affect the outcome of the suit under the governing law. Id. Where the non-moving party will bear the burden of proof at trial, the party moving for summary judgment may meet its burden by showing that the evidentiary materials of record, if reduced to admissible evidence, would be insufficient to carry the non-movant's burden of proof at trial. Celotex v. Catrett, 477 U.S. 317, 322 (1986). Once the moving party satisfies its burden, the burden shifts to the nonmoving party, who must go beyond its pleadings, and designate specific facts by the use of affidavits, depositions, admissions, or answers to interrogatories showing that there is a genuine issue for trial. Id. at 324.

**Discussion**

The parties agree that the insurance policy involved in the instant

case was issued pursuant to the National Flood Insurance Program (hereinafter "NFIP"), a federally supervised and guaranteed insurance program.  Van Holt v. Liberty Mut. Fire Ins. Co., 163 F.3d 161, 165 (3d Cir. 1998).  The NFIP is administered by the Federal Emergency Management Agency ("FEMA") pursuant to the National Flood Insurance Act (hereinafter "NFIA" or "Act").  "Congress created the program to, among other things, limit the damage caused by flood disasters through prevention and protective measures, spread the risk of flood damage among many private insurers and the federal government, and make flood insurance available on reasonable terms and conditions to those in need of it."  Id. (citing 42 U.S.C. § 4001(a))(quotation and footnote omitted).  The NFIP helps to provide flood insurance with reasonable terms and conditions for property located in flood-prone areas.  Id. at n. 2.  Under this program, insured's claims are paid off out of the United States Treasury.  Id.

In administering the NFIP, FEMA has created a "Write Your Own" ("WYO") policy program.  Under this program, private insurance companies, such as Defendant Standard Fire write their own insurance policies.  Id.  FEMA, however, sets the terms and conditions of the flood insurance policies, and the policies must generally be issued without alteration as a Standard Flood Insurance Policy (hereinafter "SFIP").  Id. at 165-66.  The "cost incurred in the adjustment and payment of any claims for losses" under an SFIP are paid from the National Flood Insurance Fund.  42 U.S.C. § 4017(d)(1).

The policy that was retroactively revoked in the instant case was an SFIP.  It was originally issued to Geraldine Insalaco, who owned the

property prior to plaintiffs. (Doc. 18, Statement of Facts, ¶ ¶ 19-20).  Upon buying the property, the policy was transferred to the plaintiffs.  (Id. ¶ 20). After the plaintiffs became the policy holder, it was renewed twice by defendant.  (Id. ¶ 22).

Defendant raises two general arguments.  First, it argues that plaintiffs' claims are preempted by federal law.  Second, it argues that even if the claims are not preempted, they fail as a matter of law.  We will address these issues separately.

**I.  Preemption**

The defendant argues that the plaintiffs' state causes of action are preempted by federal law.  It should first be noted that "[a]ny preemption analysis begins with the 'basic assumption that Congress did not intend to displace state law.'" Padalino v. The Standard Fire Ins. Co., 616 F. Supp. 2d 538, 543 (E.D. Pa. 2008) (quoting Bldg. & Constr. Trades Council of Metro. Dist. v. Assoc. Builders & Contracts of Mass./R.I., Inc., 507 U.S. 218, 224 (1993)).  Nonetheless, the following three types of federal preemption exist: 1) express preemption; 2) conflict preemption and 3) field preemption.   After a careful review, we find that none of these types of preemption apply.  We will address them separately.

    **A.  Express preemption**

Express preemption applies where Congress includes explicit language in a statute setting forth an intent to preempt conflicting state law. Lorillard Tobacco Co. v. Reilly, 533 U.S. 525, 541(2001) ("State action may be foreclosed by express language in a constitutional enactment.").  "It is easy to glean that federal law expressly preempts state law when a statute or regulation contains explicit language to that effect." C.E.R. 1988, Inc. v.

The Aetna Casualty and Surety Co., 386 F.3d 263, 269 (3d Cir. 2004). In the instant case, neither party cites any language in the Act that expressly forecloses plaintiffs' state law causes of action.

The defendant argues, however, that although not in the Act, FEMA has added language to the Standard Flood Insurance Policy, "section IX", that provides preemption, 44 C.F.R. pt. 61, app. A(2). Section IX is, in fact, a federal preemption clause and provides as follows:

**IX. What Law Governs**

> This policy and all disputes arising from the handling of any claim under the policy are governed exclusively by the flood insurance regulations issued by FEMA, the National Flood Insurance Act of 1968 (43 U.S.C. § 4001, *et seq.*) and Federal common law.

See 44 C.F.R. pt. 61, app. A(2), art. IX.

Based upon this language, the defendant argues that the plaintiffs' state law claims are preempted by federal law as this provision provides that the governing law is comprised of flood insurance regulations issued by FEMA, the National Flood Insurance Act and the Federal common law. Plaintiffs raise only state law claims against Standard Fire, therefore, Standard Fire claims that they are preempted by federal law and seeks judgment on these claims. We disagree.

As explained above, language must be explicit to provide express preemption. With section IX, the language is explicit with regard to disputes involving the *handling* of claims under a flood insurance policy and such claims are preempted. The instant case, however, does not involve the handling of a claim; it involves plaintiffs' assertion that in obtaining or procuring the policy, the defendant acted inappropriately. This case therefore raises state law causes of action with regard to

7

procurement of a policy, not the handling of a claim under a policy.

Courts have held that state causes of action involving the "handling of a claim" may be preempted, but state causes of action dealing with procuring a policy are not preempted. See Campo v. Allstate Ins. Co., 562 F.3d 751 (5th Cir. 2009) (holding that the NFIA only preempts claim arising from claims handling, and does not apply to preempt state-law procurement claims); see also, C.E.R. 1988, Inc., 386 F.3d at 272 n.12 (3d Cir. 2004) (holding that state causes of action involving handling of claims are preempted but choosing not to decide whether claims that deal with misrepresentations during insurance procurement would be preempted).   Therefore, section IX does not expressly preempt plaintiffs' cause of action.   The parties have pointed to no other portion of the Act which provides express preemption.  Thus, plaintiffs' claims are not expressly preempted.[2]

---

[2] In response to the Campo opinion FEMA issued a Memorandum on July 16, 2009 to WYO company principal coordinators, the NFIP servicing agent and adjusting firms.   FEMA indicated in the memorandum that "federal preemption should apply not just to claims handling activities, but also to policy administration.  Specifically, preemption should apply to the nationally uniform and FEMA-mandated processes governing policy issuance and the administration of existing flood policies, including but not limited to rating, renewal, transfer, non-renewal, cancellation, or reformation."   U.S. DEPARTMENT OF HOMELAND SECURITY, MEMORANDUM WYO PROGRAM BULLETIN W–09038, NOTICE OF FEMA'S INTENT TO ADOPT, BY REGULATION, A CLARIFICATION OF THE CURRENT EXPRESS PREEMPTION CLAUSE OF THE STANDARD FLOOD INSURANCE POLICY (2009) available, http:// www. nfipiservice. com/ stakeholder/ pdf/ bulletin/ w– 09038. pdf (hereinafter "FEMA Memorandum").

Since this explanation of its position, some courts have held that state law causes of action are preempted whether they involve claims handling or procurement of an SFIP.  See, e.g., Davis v. Nationwide Mut. Fire Ins. Co.,

**B. Field preemption**

The second type of preemption is field preemption, which applies where "Federal law so thoroughly occupies a legislative field as to make reasonable the inference that Congress left no room for the States to supplement it." Cipollone v. Liggett Grp., Inc., 505 U.S. 504, 516 (1992) (internal quotation marks and citations omitted). Field preemption exists where the federal regulatory scheme is "so pervasive as to make reasonable the inference that Congress left no room for the States to supplement it." Rice v. Santa Fe Elevator Corp., 331 U.S. 218, 230 (1947). Field preemption is present where any of the following three factors are met: 1) "the pervasiveness of the federal regulation precludes supplementation by the States"; 2) "the federal interest in the field is sufficiently dominant" or 3) "the object sought to be obtained by the federal law and the character of obligations imposed by it reveal the same purpose." Schneidewind v. ANR Pipeline Co., 485 U.S. 293, 300 (1988).

---

783 F. Supp. 2d 825 (E.D. Va. 2011); and Remund v. State Farm Fire & Cas. Co., No. 2:07cv448, 2010 WL 2025591 at *3 (D. Utah May 18, 2010). Other courts have continued to hold that state law causes of action dealing with procurement of policies are still not preempted. See Grisson v. Liberty Mut. Fire Ins. Co., 678 F.3d 397 (5th Cir. 2012) (holding that federal law does not preempt state-law procurement based claims for negligent misrepresentation). We find that the FEMA memorandum is not persuasive as to precluding plaintiff's state law causes of action. It is merely a memorandum which indicates FEMA's position to insurance companies, the NFIP plan servicing agent and adjusting firms. It concludes that "FEMA will review its regulations to determine whether clarification is required to fully implement its intended scope of preemption." FEMA Memorandum at 2. Although this memorandum was issued over three years ago, the parties have not cited to any actual change in the regulations. We give little weight to this memorandum in making our decision.

After a careful review, we find no field preemption with regard to plaintiffs' state law causes of action.

This case deals with the procurement of flood insurance. The Act does not deal with or provide a remedy for torts or wrongdoing during the procurement of flood insurance. Therefore, field preemption does not apply to plaintiffs' causes of action. See Paladino, 616 F. Supp. 2d at 546 ("[I]t cannot be said that Congress has thoroughly occupied this field of SFIP procurement when indeed the NFIA hardly occupies this field at all.").

**C. Conflict preemption**

The final form of pre-emption is conflict preemption.[3]  Conflict preemption exists where either (1) the state law "stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress" or (2) it is "impossible for a . . . party to comply with both state and federal law." Geier v. Am. Honda Motor Co., Inc., 529 U.S. 861, 899 (2000). We find conflict preemption is inapplicable.

Here, it is possible for a party to comply with both state and federal law. Nothing in the Act allows for an insurer to make misrepresentations or act negligently in the procurement of insurance, and they can provide insurance under the Act without making misrepresentations or acting negligently. See Padalino, 616 F. Supp. 2d at 544 ("It is certainly possible to comply with both state and federal law in this case: A WYO insurer can

---

[3] The Supreme Court has explained that field preemption and conflict preemption are not "rigidly distinct." "Indeed, field preemption may be understood as a species of conflict preemption: a state law that falls within a preempted field conflicts with Congress' intent (either express or plainly implied) to exclude state regulation." English v. General Elec. Co., 496 U.S. 72, 79 n.5 (1990).

market SFIP insurance policies that comply with federal law without making negligent or fraudulent misrepresentations[.]")

Additionally, state law tort claims do not stand as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress.  As set forth above, the purpose of the law is to reduce losses caused by flood damage and spread the risk of flood losses.  See 42 U.S.C. § 4001(a).  To allow state law claims against an insurer for negligence or misrepresentations in the procurement process does not thwart or obstruct these objectives.

In fact, allowing the state law tort claims in the instant case, would promote the government objective of reducing losses caused by flood damage.  Defendant is alleged improperly to have led the plaintiffs to believe that the property was insurable, and in fact, insured.  When the property was damaged by a storm, however, the defendant informed the plaintiffs that the property was not insurable and revoked the policy that was ostensibly in effect.  Thus, the plaintiffs suffered flood damage loss, which they would not have suffered at all if the defendant had not made misrepresentations or acted negligently.  The Act provides no remedy against the defendant for someone in the plaintiffs' position.  Without allowing state law tort actions, insurance companies such as defendant, can issue policies and collect premiums, only to back out after a flood damage claim if they find that the property was in fact not insurable.  This procedure may cause great harm to a homeowner and benefits no one, except perhaps insurance companies that can issue policies on un-insurable property and collect premiums.

Accordingly, we find that conflict preemption inapplicable to plaintiffs'

claims. Because we find that express preemption is inapplicable, field preemption is inapplicable, and conflict preemption is inapplicable, plaintiffs' claims are not preempted by federal law.

Even if preemption did apply, however, we would find that plaintiffs state law claims could still proceed. The NFIA is not implicated as plaintiffs did not have an insurance policy. Standard Fire voided the policy and returned all the premiums that the plaintiffs had paid. As the NFIA applies by its very terms to flood insurance policies and plaintiffs had theirs retroactively revoked, the NFIA is inapplicable. See Padalino, 616 F. Supp. 2d at 546 ("Although Plaintiffs thought that they had a valid SFIP from Defendant Standard Fire, and although Plaintiffs paid premiums as though they had a valid SFIP from Defendant Standard Fire, their policy was in violation of federal law and void from its inception. . . . Without a SFIP the NFIP does not apply[.]").

## II. State law tort claims

Next, defendant claims that even if the plaintiffs' causes of action are not preempted, they fail as a matter of law. We will discuss each beginning with the detrimental reliance claim.

### A. Detrimental reliance

Count I of plaintiffs' complaint asserts a detrimental reliance cause of action against Standard Fire. (Compl. ¶¶ 17-22). Plaintiffs aver that they detrimentally relied upon defendant's agreement to insure the property. (Id. ¶ 18). Defendants argue that plaintiffs knew their property was uninsurable, therefore, defendant could not have induced them into believing otherwise. After a careful review, we agree with the plaintiffs.

Pennsylvania law defines detrimental reliance (also known as

promissory estoppel) as follows:

> [a] promise which the promisor should reasonably expect to induce action or forbearance on the part of the promisee or a third person and which does induce such action or forbearance is binding if injustice can be avoided only by enforcement of the promise.

Thatcher's Drug Store of W. Goshen, Inc., v. Consol. Supermarkets, Inc., 636 A.2d 156, 160 (Pa. 1994) (quoting RESTATEMENT (SECOND) CONTRACTS § 90(1)). Defendant argues that they could not have induced the plaintiff to believe that their property was insurable. Standard Fire argues that the plaintiffs knew that their property was built over water. Plaintiffs are charged with legal notice of the SFIP's terms. They are thus charged with legal notice of the term of the policy that provides an exclusion from coverage for buildings built entirely over water. Thus, defendants argue that plaintiffs knew that their property was not insurable and Standard Fire could not induce them to conclude anything different regarding the insurability of the property.

We disagree. A genuine issue of material fact exists as to whether plaintiffs' residence is located entirely over water. Plaintiffs insist that it is not. Accordingly, summary judgment on this issue is inappropriate.

**B. Negligence**

Count II of plaintiffs' complaint asserts a negligence cause of action. (Compl. ¶ 23-27). Plaintiffs aver that Standard Fire acted negligently as follows:

> a. Failing to properly investigate the insurability of the Lake property;
> b. Failing to confirm the flood zone of the Lake Property;
> c. Failing to properly perform the underwriting process for the Lake property;
> d. Failing to properly interpret flood zone maps;

>e.  Failing to inspect the Lake property prior to insuring it;
>f.  Failing to gather sufficient information regarding the Lake property prior to insuring the Lake property; and
>g. Failing to perform an independent investigation of the Lake property and its insurability.

(Id. ¶ 24).

To recover on the basis of negligence, plaintiffs must establish the following four elements:

>1.  A duty or obligation recognized by law.
>2.  A breach of that duty.
>3.  Causal connection between the actor's breach of the duty and the resulting injury.
>4.  Actual loss or damage suffered by complainant.

Lux v. Gerald E. Ort Trucking, Inc., 887 A.2d 1281, 1286 (Pa. Super. Ct. 2005) (emphasis omitted).

Instantly, defendant argues that it cannot be negligent because it did not owe plaintiffs the duty they assert.  Defendant argues that plaintiffs allege that it failed to properly determine the flood zone.  This information, however, was provided on plaintiffs' application for insurance and the insurance company has no duty to ensure the accuracy of the information that plaintiffs submitted on their insurance application.  Plaintiffs argue that the information on the insurance application which was inaccurate was the flood zone determination.  The flood zone determination did not come from the plaintiffs.  Rather, Standard Fire generated this information from co-defendant CoreLogic.  Accordingly, the parties are in disagreement on the facts and a genuine issue of material facts exist.  The defendant's motion for summary judgment on the negligence cause of action will be denied.

**Conclusion**

Defendant Standard Fire's motion for summary judgment will be

14

denied in its entirety.  An appropriate order follows.

# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **ELLEN WILLIAMS and ELLEN MALONE,** | : | No. 3:12cv354 |
| Plaintiffs | : | (Judge Munley) |
| v. | : | |
| **THE STANDARD FIRE INSURANCE COMPANY and CORELOGIC, INC.,** | : | |
| Defendants | : | |

## ORDER

**AND NOW**, to wit, this 30th day of August 2012, Defendant Standard Fire Insurance Company's motion for summary judgment (Doc. 17) is hereby **DENIED**.

                                       **BY THE COURT:**

                                       **s/ James M. Munley**
                                       **JUDGE JAMES M. MUNLEY**
                                       **United States District Court**